Filed 10/3/14  Aliu v. Long Beach Unified School Dist. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHAMUSIDEEN A. ALIU,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>LONG BEACH UNIFIED SCHOOL DISTRICT et al.,<br><br>        Defendants and Respondents. | B251925<br><br>(Los Angeles County<br>Super. Ct. Nos. BC401529 &<br>BC470375) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Josh M. Fredericks, Judge.  Affirmed with directions.

Law Offices of George E. Omoko, George E. Omoko for Plaintiff and Appellant.

Declues Burkett & Thompson, Jeffrey P. Thompson and Steven J. Lowery for Defendants and Respondents.

Shamusideed A. Aliu ("plaintiff") sued his employer, Long Beach Unified School District (the "District"), and two of his supervisors, Matt Woods ("Woods") and Stephen Crothers ("Crothers"),[1] for employment discrimination under the Fair Employment and Housing Act, Government Code section 12900 et seq. ("FEHA"), alleging racial discrimination and harassment, religious harassment, disability discrimination and harassment, age discrimination, refusal to engage in good faith interactive process, and failure to prevent discrimination. Plaintiff prevailed against Crothers on the ground that he harassed plaintiff, and against the District on a finding that it failed to take reasonable steps to prevent Crothers's harassment of plaintiff. All other causes of action were either dismissed prior to trial, or found in favor of Woods and the District. Although plaintiff sought approximately $5 million in damages, the jury awarded him $75,000.

Following entry of judgment, plaintiff moved for an award of $996,419.37 in attorney fees; the trial court granted him the sum of $58,887.27. Plaintiff appeals that order of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 1998, plaintiff began his employment with the District as a Computer Support Specialist Assistant. In 2006, plaintiff went out on workers' compensation leave due to stress-related medical problems. He was terminated the following year, after the District received a medical report stating that he was unfit to continue in his employment at the expiration of his leave. In 2009, plaintiff sued the District and others for FEHA violations.

Plaintiff's operative complaint, filed on February 19, 2009, named the District, Woods, and Crothers as defendants. The complaint pleaded seven causes of action, as follows: 1) race discrimination, 2) disability discrimination, 3) failure to engage in good faith interactive process under FEHA, 4) age discrimination, and 5) failure to prevent discrimination against the District; and 6) racial harassment and 7) religious harassment

---

[1] A third individual, Kevin Young, was initially named as a defendant. He was apparently dismissed from the lawsuit prior to trial.

2

against all defendants. In the complaint, plaintiff made the following claims in support of his racial discrimination complaint: (a) he was passed over for promotion 11 times in favor of persons less qualified and in non-protected classes; (b) he was deprived of training opportunities in favor of those in non-protected classes; and (c) the District failed to follow proper procedures in placing him on statutory leave. He sought $103,688 for medical expenses, $2,995,200 in lost income, and $1,954,890 for loss of earning capacity. The jury did not award plaintiff anything on these claims.

The District demurred to the causes of action for age discrimination and racial and religious harassment, while the individual defendants demurred to the harassment claims brought against them. The trial court sustained each of these demurrers without leave to amend. The District then sought for summary judgment on the remaining claims, that is, discrimination based on race and disability, failure to engage in good faith interactive process, and failure to prevent harassment. The trial court granted the motion. Plaintiff appealed both rulings, and won a reversal with respect to two[2] of his claims against the District, discrimination on the basis of race and failure to prevent harassment. The appellate court also reversed the ruling on demurrer dismissing plaintiff's causes of action against the District and his supervisors for racial and religious harassment.

Trial was to a jury, which found that Crothers alone had harassed plaintiff and awarded plaintiff $16,800 in medical expenses and $25,000 in punitive damages. The trial court struck the medical expenses because they had been paid by the District's workers compensation carrier. The jury also found that the District had failed to prevent Crothers from harassing plaintiff, and awarded $50,000 against the District.

Plaintiff moved for an award of attorney fees, requesting the sum of $996,419.37. The court awarded $58,887.27 in fees. Plaintiff appeals that order.

---

[2] Plaintiff was also granted leave to amend his cause of action for age discrimination. He did not do so, and the trial court once again dismissed this cause of action.

DISCUSSION

1. *The court's order awarding plaintiff attorney fees*

The amount of an award of attorney fees, including in a FEHA action, is a question of fact within the discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; *Western Concrete Structures Co. v. James I. Barnes Constr. Co.* (1962) 206 Cal.App.2d 1.) The trial court, which possesses its own expertise on the value of legal services performed, makes its determination of attorney fees after consideration of a number of factors, including the nature of the litigation, its novelty, its difficulty, the amount involved, the skill employed in handling the case, the attention given, the success or failure of the litigation, and other circumstances of the case, the extent to which the nature of the litigation precluded other employment by the attorneys, and the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for the award. (*Thompson Pacific Const., Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440.) The award of the trial court with respect to such fees will not be disturbed on appeal unless there is a plain and palpable abuse of discretion. (*EnPalm, LLC v. Teitler Family Trust* (2008) 162 Cal.App.4th 770, 774; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.) A trial court's exercise of discretion regarding an award of attorney's fees is abused only when its ruling exceeds the bounds of reason, all the circumstances being considered. (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1274.) The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) Appellate courts independently review any legal issue regarding the appropriate criteria for a fee award, but they defer to the trial court's discretion in determining how they are to be exercised.

4

In *PLCM v. Drexler*, *supra*, 22 Cal.4th 1084, the California Supreme Court discussed the determination of what constitutes reasonable attorney fees: "'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court. . . . [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)" (*Id.* at p. 1096.) It also considers the attorneys' experience in the particular type of work demanded. (*La Mesa-Spring Valley School Dist. of San Diego County v. Otsuka* (1962) 57 Cal.2d 309.)

In support of his motion for attorney fees, plaintiff submitted a time sheet showing that from the inception of the case in November of 2008 through May of 2013, a total of 639.4 hours was expended by his counsel. The billing reflected the time spent by plaintiff's two attorneys, George Omoko and Moses Onyejekwe. The records did not indicate which counsel worked on which tasks or how many hours each individual counsel billed. Omoko's declaration set forth occasions in which he charged between $350 and $400 per hour. Nothing was filed on behalf of plaintiff to support Onyejekwe's requested hourly billing rate of $475 per hour. The moving papers used a rate of $475 per hour based on the fact that in a prior employment case that Omoko worked on in 2011, the trial court determined $475 per hour to be a reasonable rate for a lawyer who had less experience than he did.[3] Applying that rate to the 639.4 hours recorded, plaintiff calculated the lodestar at $303,667.50. Plaintiff suggested that the lodestar amount be reduced by 7.14 percent to reflect the fact that he did not prevail on his claim against Woods, and that the award be adjusted upward by utilizing a multiplier of 3.5, based on

_____

[3]     In the same case relied upon in his declaration, Mr. Omoko filed a declaration stating that his hourly rate was $300 per hour.

5

the novelty and difficulty of the case, the skill with which it was prosecuted, and the fact that counsel represented plaintiff on a contingency basis. Based on the foregoing, plaintiff's counsel requested nearly $1 million in fees for obtaining a $75,000 judgment.

The District and Crothers filed a substantial opposition in response to the motion. The main point raised in the opposition papers was that plaintiff's case was almost a complete failure and no fee or a dramatically reduced fee should be awarded. It was noted that out of seven causes of action against the District, two each against Woods and Crothers, plaintiff had only prevailed on three and received a judgment of $75,000, though he sought a judgment in the amount of approximately $5 million dollars. This, they argued, certainly could not be considered a successful litigation for plaintiff. The opposition also questioned the hourly rate requested of $475 per hour, and the requested multiplier. In regard to Crothers, they noted that he was out of the case from 2009 to 2011, but was charged for services performed by plaintiff's counsel during that time period. The opposition also challenged plaintiff's assertion that the causes of action were factually intertwined. Defendants suggested that the total fee to be awarded should total $41,175; $18,930 against Crothers and $22,245 against the District. Plaintiff's reply contained nothing to support the assertion that the successful and unsuccessful causes of action were intertwined. The District also argued that in the other employment case referenced by plaintiff's counsel, the trial court granted attorney's fees for the associates trial work at the rate of $300 per hour, not $475 per hour, which was strictly for appellate work.

In support of the motion for attorney fees, plaintiff's counsel Mr. Omoko filed his own declaration. He stated in relevant part that it was a difficult case because there was no "smoking gun," and due to vigorous representation by the District's counsel, a great deal of time was required to be incurred in representing plaintiff. This in turn, to a minor extent, reduced the amount of time available for him to work on other cases for other clients. In opposition thereto, the District's counsel filed a declaration in which he stated that counsel spent most of his time and effort before and during trial attempting to prove the discrimination claim. This included the deposition of many District employees on the

6

question of the failure to promote plaintiff. On the three causes of action on which plaintiff prevailed, two against Crothers for harassment and one against the District for failure to prevent harassment, he spent very little time. Crothers was not deposed; indeed, Crothers was not even a defendant during the time commencing when he was dismissed from the action by the trial court until he was brought back into the case by the Court of Appeal two years later. The discrimination complaints covered the time period 1998 to 2007, while the complaint against Crothers for harassment and against the District for failure to prevent that harassment was during the one year that Crothers worked for the District. The District further declared that Mr. Onyejekwe did not participate in the trial, did not examine any witnesses, and did not engage in any argument on the many trial and pre-trial motions. Therefore, his billing charges should be greatly reduced.

Plaintiff's motion for attorney fees was heard on August 20, 2013. The hearing judge, who was not the judge who presided over the trial,[4] had familiarized himself with the file and had reviewed plaintiff's billing statement, and all of the declarations, points and authorities and exhibits submitted by the parties. The trial court provided the parties with a tentative decision. After hearing oral argument of counsel, the court adopted its tentative ruling as the order of the court. In making its ruling, the court did the following:

1. Reduced the number of hours for which plaintiff should be compensated from 639.4 to 539.8, because it found a number of charges were duplicative or unreasonable.

2. Applied a fraction of 3/11 or 27.27% to the fees sought, to reflect the limited success obtained by prevailing on only 3 of 11 causes of action.

3. Found that the prevailing rate for services of the type rendered by plaintiff's counsel was between $250 and $300 per hour.

4. Increased the fee rate for plaintiff's counsel to $400 to take into account the contingent nature of the compensation.

---

[4] Judge John L. Segal, who presided at trial, was on assignment to the Court of Appeal at the time the fee motion was heard. Judge Josh M. Fredericks heard the motion for attorney fees.

5. Decided that no further enhancements of the fees were warranted.

6. Decided not to apportion the fees between the District and Crothers.

In explaining in detail how it arrived at the amount of its order for attorney fees, the court stated: "So it seems that attorney's fees should be awarded in this case, and the principal method employed i[s] the [lodestar] Adjustment Method. And using [this] method the trial court first determines a touchstone, or [lodestar] figure, based on careful compilation of the time spent by and the reasonabl[e] hourly compensation for each attorney, and [the] resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account. [¶] And the ultimate goal is to determine a reasonable attorney fee and not to encourage unnecessary litigation and claims that serve no public purpose, [either] because they have no broad public impact or because they are factually and legally weak. [¶] So, in this matter the plaintiff's counsel claims 639.38 overall hours based on a rate that he has indicated is $475 [per hour]. These hours are tallied in a single combined time sheet that's offered by counsel, Mr. Omoko and also Mr. Onyejekwe. And the court [h]as reviewed that and made a reduction for what appears to be either duplicative or unreasonable time."

The court continued: "539.8. Now, from there, I'm mindful that fees are not awarded under FEHA to encourage unnecessary litigation claims that are factually or legally weak, and therefore serv[e] no public purpose as noted in *Chavez*. [¶] The court notes that plaintiff prevailed on three out [of] 11 causes of action against all three defendants, as summarized as follows: No causes of action against Woods, and one cause of action against the school district, and one cause of action against Crothers. Two causes of action against Crothers, I'm sorry, so that's the three causes of action that the plaintiff prevailed on out of the 11. [¶] So this case, I guess, really comes down to as far as I can tell, the bad conduct of Crothers and Long Beach Unified School District's failure to correct that. . . . [¶] So that means, as I said, it was the Crothers's conduct and the school district's failure to correct this thing. And all efforts to over-plead this action into a suit against the Long Beach Unified School District, directly, or against anyone else other than Crothers were factually and legally weak, the court finds. And the effort

8

by counsel in that regard should not be compensated. . . . [¶] Here, though the plaintiff is correct that discrimination suits typically involve several causes of action arising from the same set of facts, the fact is that here, the plaintiff alleged 11 causes of action, seven of them against the school district, and two against Crothers, and two against Woods. The plaintiff[] prevail[ed] only on one cause of action against the school district, and two, [against] Crothers. [¶] The court, therefore, finds that it's appropriate to award the fees based on the percentage of success across the causes of action."

"In other words, 3/11ths, or 27.27 percent, multiplied by the reasonable total fees expenditure. All right? So we start out with 539.8 hours, right? And the saying that you're going to apportion this [time] to give 27.7 percent of the fees claimed. The next piece in here would be what the hourly rate should be, and the proper hourly rate is simply the hourly rate prevailing in the community for similar work. And the hourly rate prevailing for plaintiff's work of this kind presented here is, in the court's judgment, $250 to $300 per hour. [¶] However, the court is going to increase this to $400 [per hour] considering the contingent nature of the compensation. For most plaintiff's attorneys the option-to-cost involved here, and the fact that plaintiff's counsel obviously represented plaintiff well enough, to successfully appeal the granting of the defense motion for summary judgment and to prevail, at least in part at trial. [¶] So, the calculation is going to be 539.8 times 400, which I believe is $215,920. And then multiplying that [lodestar] by plaintiff's ratio of success 3/11ths, yields a fee award of $58,887.27."

Though the trial court's methodology in reducing the fees requested based on the percentage of the causes of action upon which he prevailed is questionable at best, it is clear from its ruling that the judge was familiar with the case in general and the motion in particular. He found that plaintiff's success was quite limited and that a high percentage of the legal services rendered were incurred in prosecuting causes of action in which plaintiff was not successful. In setting the fee he also took into consideration the contingent nature of the fee and based thereon adjusted the prevailing hourly rate upward. In addition, he reduced the number of hours upon which his order for compensation was

9

based, eliminating time billed for those charges which he found to be unreasonable or duplicative. "'[A]n appellate court reviews the action of the lower court and not the reasons given for its action; and . . . there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct. "The fact that the action of the court may have been based . . . upon an improper or unsound course of reasoning, cannot determine the question of its propriety. . . ."'" (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1352-1353.) Thus, the trial court took into consideration all of the factors pertinent to plaintiff's fee request, and applied the proper method for determining the fee to be awarded to plaintiff based upon those considerations. We cannot say that the fee award constituted a plain and palpable abuse of the trial court's discretion.

2. *The failure to award additional fees to plaintiff's counsel for the preparation and hearing of the motion for attorney's fees and the post-judgment motions*

Plaintiff notes that he also requested in his motion for attorney fees an award of the sum of $9,500 for the cost of bringing the motion, and an additional $37,050 for successfully opposing post-trial motions attacking the verdict. He contends that the trial court erred by failing to award these additional fees.

It is well established that plaintiffs and their attorneys may recover attorney fees for fee-related matters. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 580.) Further, on some occasions, in the discretion of the trial court, a multiplier may be applied to such fees. (*Id.* at p. 581.) The court reporter's transcript, however, clearly shows that the trial court in making its award of attorney fees failed to consider the requested $9,500 for bringing the attorney fee petition, including the hearing thereon.

Plaintiff asks us to exercise powers under Code of Civil Procedure section 43 to increase the attorney fee award by $37,050 for post-trial fees incurred in opposing and defeating various motions brought by the District, plus $9,500 for bringing the motion for attorney fees. It requests us to do so in view of the fact that the judge who conducted the trial in the case is not available to make such determination and from our review of the

10

trial court record in preparing our opinion in this case, we are in a better position to make this determination than a Superior Court judge who was not the trial judge in the case.

Code of Civil Procedure section 43 provides us with the authority to make this determination. It states: "The Supreme Court and the courts of appeal may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." In its Respondent's Brief, the District does not deny that plaintiff is entitled to a fee order for such services rendered. It also does not contend that this court does not have the authority to make the requested order. Its only contention is that the amount of the additional fees requested was not provided by plaintiff until it filed its Reply brief and thus the court is not bound to make the additional award. In this regard it states: "Appellant argues the court abused its discretion by not awarding fees for post-trial motions. Appellant had included a supplemental declaration with his reply papers. Appellant provides no authority for the notion [that] a trial court is bound to award fees based on material presented for the first time in the reply papers."

Though it is true that a request for relief should not be raised for the first time in reply papers, that is not what occurred in the present case. Plaintiff made specific reference in its motion for attorney fees to the fact that it was opposing several of the District's post-trial motions and indicated that he would be requesting additional fees in that regard. However, plaintiff could not at that time state the amount of attorney fees which would be so incurred; rather, counsel indicated that supplemental declarations would be submitted in that regard when that information was available. He subsequently did so. The District does not contend that it was in any way prejudiced by this procedure.

We agree that plaintiff's counsel should be compensated for the bringing of the attorney fee motion[5] and for successfully opposing the District's post-judgment motions, and we see no reason why this matter needs to be returned to the trial court. However,

_____

[5]     The District does not contend that plaintiff is not entitled to be compensated for the expense of bringing the motion for attorney fees.

11

we also see no reason to compensate plaintiff for such services at a rate higher than that determined to be appropriate by the trial court, i.e., $400 per hour. Based on this hourly rate, we direct the trial court to enter an order for additional attorney fees in favor of plaintiff in the sum of $8,000 for bringing the attorney's fee motion and $31,200 for successfully opposing the District's post-judgment motions, for a total of additional fees in the sum of $39,200.

3. *The court did not abuse its discretion in reducing the hours it allowed for the computation of the attorney fee award*

Plaintiff claims that the trial court erred in reducing the hours it allowed for computation of the attorney fee award in regard to (a) legal research to oppose a motion for nonsuit; (b) jury instructions; (c) motions in limine; and (d) second seat counsel at trial. As set forth above, a challenge to these rulings is considered pursuant to the abuse of discretion standard. The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.) The party asserting that the trial court abused its discretion bears the burden of showing an abuse of discretion occurred. (See *Najera v. Huerta* (2011) 191 Cal.App.4th 872.) With these rules in mind, we consider each of plaintiff's claimed errors.

(a) *Non-suit.* Plaintiff characterized the trial court's ruling reducing the number of hours for which attorney fees were sought for opposing the District's motion for non-suit as his taking "a shot in the dark." The court's order, however, clearly states that in making its ruling, the court "considered all the papers submitted" as well as the "oral argument of counsel." It further stated that it was adjusting the total hours sought as being either duplicative or unreasonable. In the case of the non-suit motion, it struck four hours for legal research. We cannot say that the trial court's conclusion exceeded the bounds of reason.[6]

---

[6] It is not unusual for the hearing on a motion for non-suit to take place only a few minutes after the motion is made. A plaintiff who is prepared for trial rarely needs to do legal research to oppose a non-suit motion.

12

(b) *Jury Instructions.* Plaintiff makes the same contention in regard to the court's reduction in the time allowed for the preparation of jury instructions. Based on its experience, the court impliedly found that 18.5 hours to prepare jury instructions in the case was excessive. Plaintiff has not provided us with any basis for concluding that this finding constituted an abuse of discretion.

(c) *Motions in Limine.* Plaintiff's contention is the same. Once again, however, he has failed to demonstrate that the trial court in making its ruling abused its discretion, that is, that its decision exceeded the bounds of reason.

(d) *Counsel at Trial.* The trial court in determining the number of hours it would allow as the basis of attorney fees for plaintiff's trial of the case, without specifically saying so, did in effect only allow fees to plaintiff for one counsel at trial.[7] The court stated: "Time for two attorneys to be at trial on multiple occasions. Eight hours on 4/29. Twelve on 4/26. Twelve on 4/25. Twelve on 4/24. Twelve on 4/23. Twelve on 4/22. Twelve on 4/19, and 12 on 4/17, for a claim of 104 hours. The court would allow 52 hours for a reduction of 52." Therefore, without specifically stating that it was doing so, the trial court in effect refused to award plaintiff attorney fees for his second trial attorney.

Plaintiff fails to provide any authority that the court's allowance of an attorney fee for only one trial attorney constitutes an   abuse of discretion. He does cite one California case, *El Escorial Owners' Assn. v. DLC Plastering*, *supra*, 154 Cal.App.4th at pages 1367-1368, for the proposition that a court may substantially reduce fees where multiple counsel represent a party leading to duplication of effort. This is exactly what the trial court did. (See also *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 753-754.) Defendant argued at the hearing on the motion for attorney fees that during the trial, plaintiff's second counsel did not participate in voir dire, did not examine

---

[7]     The time sheets submitted by plaintiff in his motion for attorney fees combined the services of his two counsel, and did not indicate which services were charged attributable to which counsel.

any witnesses, did not make any objections, and did not make any arguments to the court or to the jury. The trial court in ruling on the motion apparently took these matters under consideration when it reduced the requested attorney fees for legal services rendered at trial. However, the fact that second counsel at trial is not actively involved in arguing motions or examining the witnesses does not mean that he or she is not contributing to the presentation of the client's case. Anyone who has ever tried a case knows that trial counsel has a lot more going on when presenting a case to a jury then just argument and questioning of witnesses. However, instead of presenting an argument demonstrating that necessary and that *non-duplicative* services were rendered by second counsel at trial, plaintiff merely argues that the trial court abused its discretion because the District had two trial attorneys, so it was entitled to be compensated for the services of two counsel. We find this argument wanting. The question is not how many counsel defendant had, but whether plaintiff's second counsel provided necessary, non-duplicative services at trial. Plaintiff failed to provide any evidence on this issue.

4. *Evidentiary objections*

Plaintiff contends that he filed evidentiary objections to the declaration of Jeffrey P. Thompson filed in opposition to Plaintiff's Motion for Attorney Fees, which the trial court failed to rule on. He fails to cite the record when he states, "The trial court foreclosed any attempt to bring it to its attention as previously stated." He then requests that this reviewing court rule upon the objections.

Plaintiff further fails to provide any argument to this court in regard to the validity of his evidentiary objections, nor does he argue how the lower court's ruling would have changed if his objections had been sustained. Based on plaintiff's failure to provide argument and citation to the record, we treat the point as forfeited. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784.)

14

5. *Payment of the fee award*

Finally, plaintiff contends that the District should be liable to pay the entire fee award. The fee order specifically states that the fees are awarded against both Stephen Crothers and the Long Beach Unified School District.  Thus, the District *is* liable to pay the entire fee award.  The fee order also states that the court found it unnecessary to apportion the fee award against the defendants.

## DISPOSITION

The trial court is hereby ordered to enter a modified order awarding additional attorney fees to plaintiff in the sum of $39,200.  Except as so modified, the order of the trial court is affirmed.  Plaintiff shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]



We concur:



MOSK, ACTING P.J.



KRIEGLER, J.

---

[*]      Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15