Filed 7/11/23  County of Riverside v. Hucana Trust CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE COUNTY OF RIVERSIDE, | |
| Plaintiff and Respondent, | E078588 |
| v. | (Super.Ct.No. CVSW2100072) |
| HUCANA TRUST et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermundez, Judge.  Affirmed.

Wright, Finlay & Zak, and Jonathan D. Fink, for Defendants and Appellants.

Minh C. Tran, County Counsel, Ronak N. Patel, Chief Deputy County Counsel, Bruce G. Fordon and Braden J. Holly, Deputy County Counsel, for Plaintiff and Respondent.

1

In this abatement action, Hucana Trust (the trust) and Estala Mata (collectively, the trust defendants) appeal from a postjudgment order awarding attorney fees and costs to the County of Riverside (the County) and assessing penalties against the trust defendants. We affirm the order.

BACKGROUND

In 2020, the trust owned a property located in an unincorporated area in Riverside County, California. Mata registered the trust's business name. Commercial cannabis production is prohibited in the "'Rural Residential'" zone in which the property is located. In May 2019, the trust leased the property to Serbanso Solorio Lozano. The lease prohibited using the property for commercial activity without the landlord's written consent and provided that "[t]enant shall not use the premises for any ilegal [*sic*] activities." (Capitalization omitted.) Lozano was the property's tenant in May 2020.

On May 12, 2020, Ron Welch, a code enforcement officer with the Riverside County Code Enforcement Department (the Department), investigated the property in response to a complaint. Welch found three greenhouses filled with cannabis plants. He estimated that there were about 1,500 plants in total, with 500 plants in each greenhouse. Welch took photographs of the property and the greenhouses.

In June 2020, Sara K. Moore, a deputy county counsel for the County, sent a cease and desist letter to the trust defendants and to any occupants of the property. The letter notified the recipients that cannabis cultivation on the property was prohibited under Riverside County Ordinance No. 348 and directed them to immediately stop cultivating

cannabis on the property. The trust defendants were instructed to contact the Department by June 17, 2020, so that the cannabis could be destroyed in an officer's presence. In a letter dated June 15, 2020, the trust defendants notified Lozano of the County's letter and gave Lozano five days "to fix or remove from the premises any illegal materials (if any)."

On June 18, 2020, Welch returned to the property and saw that the three greenhouses were still filled with cannabis plants. He took photographs of the greenhouses. In July 2020, the County filed a complaint against the trust defendants for abatement of a nuisance, seeking a temporary restraining order and permanent injunctive relief. In late September 2020, the County dismissed the complaint without prejudice based on information from the Department that illegal cannabis cultivation was no longer occurring on the property. When the County dismissed the action, Lozano no longer lived on the property.

On October 1, 2020, the trust defendants leased the property to Carlos Garcia. One of the lease's terms provided: "Tenants shall use the premises for residential Purposes only, tenant or members of the household will not permit the premises to be used for any illegal activity."

Welch inspected the property on October 21, 2020, in response to a new complaint about unlawful cannabis cultivation. Welch "could clearly see cannabis plants growing underneath the metal hoops of the former greenhouse." Welch returned to the property on December 10, 2020. The greenhouse was newly covered by a plastic sheet. From a vantage point on a neighboring property, Welch saw at least 150 cannabis plants in the

3

greenhouse. He "also saw the bottoms of dozens more pots placed packed tightly inside the greenhouse." He took photographs of the greenhouse and the property.

In January 2021, the County filed a complaint against the trust defendants for abatement of a nuisance, again seeking a temporary restraining order and permanent injunctive relief. The trust defendants were served with the complaint on January 18, 2021. Two days later, the court issued a temporary restraining order against the trust defendants, enjoining "Unlawful Cannabis Cultivation" on the property and ordering the immediate removal of all cannabis and cannabis plants from the property.

On January 21, 2021, Welch went to the property and posted a copy of the temporary restraining order on the front gate. The greenhouse was still there. He took a photograph of it.

Five days later, Welch returned to the property. An occupant granted Welch access to the property for inspection. The greenhouse structure and all of the cannabis plants had been removed. No one provided Welch with a valid California medical marijuana card during the visit.

When the court issued the temporary restraining order, the court set a hearing date in February 2021 for the trust defendants to show cause as to why a preliminary injunction should not be issued. In the trust defendants' written opposition to the request for a preliminary injunction, the trust defendants' attorney attested that on January 13, 2021, the trust defendants informed him of a cease and desist letter they received concerning cannabis cultivation on the property. The attorney stated that after he

4

instructed the trust defendants to contact the tenant about the letter, he was informed that there were "about 18 cannabis plants" on the property and that they "qualified under the medical exemption." The tenant sent a photograph of the plants to the trust defendants' attorney. (The photograph is very dark and nothing is discernible in it.) The trust defendants' attorney sent a representative to the property to investigate. According to the trust defendants' attorney, the "investigation did not turn up anything that supported the Declaration of Code Enforcement Officer Ron Welch."

In February 2021, the court issued a preliminary injunction, enjoining the illegal cultivation of cannabis on the property and ordering the immediate removal of all cannabis and cannabis plants from the property.

In June 2021, the County moved for summary judgment. In support of the motion, the County filed declarations from Welch and Moore with numerous exhibits attached, including the photographs that Welch had taken.

In opposition to the motion, the trust defendants filed another declaration by their attorney, which was accompanied by numerous exhibits. The trust defendants' attorney reiterated what he had stated in opposition to the issuance of the preliminary injunction. He again stated that the property's tenant had indicated that on January 13, 2021, there were only 18 cannabis plants on the property and that those plants were for personal use "and qualified under the medical exemption." In a document titled "declaration" and dated July 21, 2021, Jose Cardenas claimed that he was the tenant on the property when a code enforcement officer visited on an unspecified date "last summer." (Capitalization

5

omitted.)  Cardenas stated that the officer found "18 baby marijuana plants," which Cardenas removed that day.  Cardenas stated that "[i]f required by court I am willing to appear and testify to my declaration."  He did not sign the declaration under penalty of perjury.

The trust defendants' attorney claimed that he and the trust defendants would have fully and immediately cooperated with the County if the County had "immediately contacted" him about the violation before initiating litigation.  Counsel also stated: "None of what the County has submitted to the Court provides any evidence that the Defendants were aware of, or could anticipate any alleged code violation activity when leasing the property."

The trial court granted the motion for summary judgment and permanently enjoined the unlawful cultivation of cannabis on the property.  The court sustained the County's evidentiary objection to the trust defendants' attorney's declaration "in its entirety."

The court found that there was evidence that the trust defendants "permitted unlawful cannabis cultivation on [the] property on multiple dates, including 5/12/20, 6/18/20, 10/21/20, 12/10/20, and 1/21/21."  The court rejected the trust defendants' argument that there was no evidence of cannabis cultivation after Lozano ceased being the tenant.  The court explained that there was "no evidence to contradict the County's code enforcement officers' visual inspections after 9/30/20, and their photographs of cannabis cultivation in violation of" the local ordinance.  The court reasoned that "it is

6

not enough to simply state in opposition that only 18 'baby' marijuana plants were present, when the photographic evidence is to the contrary; admissible evidence disput[ing] the photographic representation is required." The court found the County to be the prevailing party and ordered that costs and reasonable attorney fees would be awarded in amount to be determined by separate motion.

The County filed a motion for attorney fees, costs, and penalties. The County argued that attorney fees and costs were authorized by Government Code section 25845, subdivisions (b) and (c), and Riverside County Ordinance No. 725 (Ordinance 725) and that penalties were authorized under Ordinance 725, section (11)(b) (Ordinance 725(11)(b)). (Unlabeled statutory references are to the Government Code.) The County requested $97,000 in penalties, consisting of $1,000 per day in penalties for 97 days from October 21, 2020 (the first day that cannabis cultivation was detected after dismissal of the first action) to January 26, 2021 (when the County confirmed that the greenhouse and the cannabis plants had been removed). For attorney fees and costs, the County sought $26,065.41, consisting of $22,538 for attorney fees, $365.68 for paralegal costs, $420.77 for the cost of service and mailing, and $2,740.96 for the cost of enforcement. The motion was supported by declarations from Welch, an accounting technician from the Department, a supervising code enforcement officer, and Moore, along with accompanying exhibits.

Moore attested that from December 30, 2020, to October 3, 2021, the Office of County Counsel spent 71.4 hours on the matter and an additional five hours finalizing the

motion. Moore had been licensed to practice law for six years. She detailed the billing rates claimed in other cases by lawyers who worked at law firms, and she submitted supporting documentation from those cases. On the basis of that evidence, Moore determined that a "reasonable rate in the community for litigating nuisance abatement matters for attorneys who have practiced for six (6) years should be at least $295.00 per hour."

In opposition to the motion, the trust defendants filed a declaration by their attorney with supporting exhibits. The trust defendants' attorney repeated the claim that the evidence showed that there were only 18 cannabis plants on the property and that the matter would have been resolved had he "been immediately contacted." Counsel also reiterated: "None of what the County has submitted to the Court provides any evidence that the Defendants were aware of, or could anticipate any, alleged code violation activity when leasing the property."

In addition, the trust defendants' attorney attested that in an administrative code enforcement hearing involving Lozano, Moore had said "in so many words" that she uses "a different cost/attorney fees approach/calculation template in litigation before the Court then [*sic*] I use in Code Enforcement Hearings." (No transcript of that hearing is included in the record on appeal.) The trust defendants' attorney argued that Moore "use[d] embellished derived fee numbers unrelated to County Counsel for litigation."

In a supplemental declaration submitted in support of the County's reply, Moore explained what happened at the administrative hearing and why her office seeks

8

reimbursement at different rates in different procedural settings. At an administrative cost recovery hearing in October 2021 concerning costs related to the violations on the property when Lozano was the tenant, the trust defendants' attorney asked "why the total cost recovery sought was different from that presented by the County Counsel's office during discussions prior to the dismissal of the Court action." Moore then "explained to the administrative hearing officer that the rate charged [by the office of county counsel] to its fellow County department, Code Enforcement, is $187.00 per hour while the rate sought for recovery in Court is $295.00 per hour. In administrative hearings, Code Enforcement only seeks cost recovery for attorneys' fees at the department rate of $187.00 per hour. In Court proceedings, the County seeks cost recovery for attorneys' fees at the reasonable rate in the community of $295.00 per hour based on authorization pursuant to [section 25845] and case law."

At the court's request, Moore submitted an additional declaration, describing how she spent 76.4 hours working on the case.

The trial court held a hearing on the County's motion for fees, costs, and penalties in December 2021. Counsel for both parties appeared and argued. The record on appeal does not contain a reporter's transcript of the hearing. The Settled Statement does not describe the hearing in detail.

The trial court granted the County's motion, awarded the County $93,965.41 in fees and costs, and assessed penalties against the trust defendants. The court imposed penalties of $67,900, consisting of $700 per day for 97 days. The court found "sufficient

9

evidence of a willful violation during the time period for which the civil penalties [were] imposed." The court explained: The violation was willful, even though the trust defendants got "rid of the first tenants that were offenders by growing marijuana," because "the next tenants did the same. The lease language was clearly not enough to stop the concerns at the property regardless of who was renting the property. With notice of the prior activity to the point of resolution with a county attorney, the property owner should have been much more diligent on controlling issues on the property. Further, the cannabis observed by [an officer] was 500-1500 plants in 30 x 60 feet greenhouses. This was not a small-scale operation. Notice was given by the County of the activity. The plants were removed or harvested. On a later visit, [the officer] observed a greenhouse that was 30 x 80 feet. Now, [the officer] observed 150 plants. This was not a personal use operation. Nor was it a large-scale operation. Based on the totality of the facts, $700 per day is a more reasonable civil penalty."

The court also awarded the County $26,065.41 in fees and costs. The court found the award of fees and costs to be "reasonable and necessary."

## DISCUSSION

The trust defendants contend that the trial court erred by awarding the County fees and costs and imposing penalties, because the trust defendants were not provided proper notice of the illegal cannabis cultivation on the property. The trust defendants argue in the alternative that assessment of daily penalties was not supported by substantial evidence and is excessive. The arguments lack merit.

10

A. *Legal Background*

Under section 25845, a board of supervisors may establish by ordinance "a procedure for the abatement of a nuisance." (§ 25845, subd. (a).) "A county may, by ordinance, provide for the recovery of attorneys' fees in any action." (*Id.*, subd. (c).) The attorney fees awarded to a prevailing party shall not "exceed the amount of reasonable attorneys' fees incurred by the county in the action or proceeding." (*Ibid.*)

Riverside County Ordinance No. 348.4913, section 19.501(A), prohibits and declares a nuisance any unlicensed and unpermitted cannabis activity in the County. The ordinance also prohibits all outdoor cultivation of cannabis in unincorporated areas of Riverside County.

Ordinance 725(11)(b) provides: "Any person, whether acting as principal, agent, employee, owner, lessor, lessee, tenant, occupant, operator, contractor or otherwise, who willfully violates the provisions of any Land Use Ordinance or any rule, regulation, order or conditions of approval issued thereunder by committing, causing, allowing, maintaining, continuing or otherwise permitting a violation of any Land Use Ordinance shall be liable for a civil Penalty not to exceed $1,000.00 for each day or portion thereof, that the violation continues to exist." Consistent with section 25845, the ordinance provides that attorney fees may be awarded to the prevailing party but not in an amount that exceeds "reasonable attorneys' fees incurred by the County in the abatement action or proceeding." (Ord. 725, § (15).)

11

B. *Notice*

The trust defendants argue that the trial court erred by imposing penalties and awarding the County fees and costs under Ordinance 725 because the County failed to comply with the notice requirements in section 53069.4, subdivision (a)(1). The County argues that the statute is inapplicable because it applies to administrative fines and not to civil penalties awarded in litigation.

The trust defendants could have made this argument in the trial court but did not. We consequently consider the argument forfeited. (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897; *Garcia v. Seacon Logix, Inc.* (2015) 238 Cal.App.4th 1476, 1489.)

In any event, the argument lacks merit for the reasons explained by the County. Section 53069.4 governs how a local agency imposes administrative fines and penalties. (*Id.*, subd. (a)(1) ["The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties"].) The provision does not apply to penalties imposed by a trial court.

C. *Willfulness*

The trust defendants argue that there was no evidence that they willfully violated Ordinance 725, so the trial court erred by assessing penalties against them. We disagree. We review the trial court's factual determination that the trust defendants acted willfully for substantial evidence. (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th

12

138, 143.)  We independently review questions of statutory interpretation.  (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633.)

The term "willfully" is not defined in Ordinance 725(11)(b).  We give statutory terms "their ordinary meanings unless special definitions are provided."  (*Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545.)  The term "'willful'" "refers generally to intentional conduct undertaken with knowledge or consciousness of its probable results.  [Citation.]  Willful conduct does not require a purpose or specific intent to bring about a result.  However, it does require more than negligence or accidental conduct."  (*Patarak v. Williams* (2001) 91 Cal.App.4th 826, 829 (*Patarak*).)

The trial court's conclusion that the trust defendants acted willfully is supported by substantial evidence.  As the trial court found, the trust defendants knew from the prior abatement action that the property's prior tenant had cultivated between 500 and 1,500 cannabis plants on the property.  The trust defendants thus knew that the property could be used for cultivating a significant quantity of cannabis plants.  The trust defendants also knew that for the prior tenant a lease provision prohibiting illegal activity on the property did not deter the tenant from illegally cultivating cannabis on the property.  Despite that knowledge, just three weeks after the County dismissed the other action and the trust defendants leased the property to a new tenant, a code enforcement officer again found cannabis plants growing on the property.  The plants were growing in one of the same greenhouse structures in which cannabis had previously been grown.  Nearly two months later, the officer discovered at least 150 cannabis plants growing in

13

that greenhouse. That evidence supports a reasonable inference that during the two and one-half months of the new tenancy and before that inspection the trust defendants did not exercise any diligence in ensuring that the property was not again being used to cultivate cannabis. The trust defendants' knowledge that the property had already been used for cultivating cannabis despite a lease provision prohibiting illegal activity made them conscious of the probability of the same activity from another tenant. That knowledge, along with their lack of diligence in preventing the new tenant from doing the same, amounted to sufficient evidence of willfulness. (See *Patarak*, *supra*, 91 Cal.App.4th at p. 829.)

D. *Number of Cannabis Plants*

The trust defendants also argue that there was not sufficient evidence to support the assessment of daily penalties against them for 97 days because the trial court erroneously included the cannabis plants that were on the property before October 2020, during Lozano's tenancy. We disagree.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) The appellant bears the burden on appeal of affirmatively demonstrating error "on the basis of the record presented to the appellate court." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

In its ruling, the trial court did mention the 500 to 1,500 cannabis plants that were previously on the property and were part of the other abatement action. But nothing in

14

the record before us indicates that the trial court relied on the prior illegal activity as a basis for imposing penalties. Rather, the court mentioned the prior illegal activity in explaining why the trust defendants should have acted more diligently in ensuring that the new tenant did not also cultivate cannabis on the property, given the scale of the prior activity. Moreover, the trial court properly noted that in the relevant period of the new action the officer had discovered that there were 150 cannabis plants on the property. On this record, we must presume that the trial court did not improperly rely on the amount of cannabis cultivated during the prior tenancy in assessing daily penalties for the new tenant's cannabis cultivation.

E. *Excessive Hourly Rate*

The trust defendants also contend that the attorney fee award was excessive because the County admitted that it had charged a higher rate for attorney fees in this action than in the previous action. We reject the argument. We review for abuse of discretion the trial court's determination of reasonable attorney fees. (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623.) The only argument the trust defendants make in their opening brief on this point is that "even though the First Action involved a more extensive nuisance (a significantly larger marijuana grow), the County admitted it was charging fees at a significantly higher hourly rate for this action than it did in connection with the First Action—more than double!" The trust defendants do not provide any analysis as to why awarding attorney fees based on the hourly rate of $295, which Moore determined was a reasonable rate in the community, violated Ordinance 725, section (15)

15

or section 25845, subdivision (c).  The trust defendants also do not provide any explanation or analysis on how the trial court abused its discretion by determining that the requested attorney fees were reasonable.  The argument is too undeveloped to be susceptible of evaluation and we will not develop appellants' arguments for them. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)  The trust defendants also do not support the argument with any legal analysis or authority, so we consider it forfeited.  (*Id.* at p. 161.)  In any event, the argument is meritless.  The trial court's determination of a reasonable hourly rate was supported by Moore's declaration, which was not facially lacking in credibility.  (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009-1010.)

DISPOSITION

The postjudgment order awarding the County attorney fees and costs and imposing civil penalties on the trust defendants is affirmed.  The County shall recover its costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.


We concur:

MILLER
   Acting P. J.
RAPHAEL
    J.

16